ORDERED.

**Dated:  October 08, 2015**

_Caryl E. Delano_
Caryl E. Delano
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

In re:                                                    Case No. 9:14-bk-08659-FMD

Pasquale B. Narcisi, II,                                  Chapter 7

       Debtor.
_____/

Marjorie and Norman Aamodt,

       Plaintiffs,

v.                                                        Adv. Pro. No. 9:15-ap-058-FMD

Pasquale B. Narcisi,

       Defendant.
_____/

**MEMORANDUM OPINION AND ORDER ON
PLAINTIFFS' AMENDED MOTION FOR SUMMARY JUDGMENT**

Over thirty years ago, Plaintiffs entered into a consignment agreement with Defendant for the sale of personal property in which they were guaranteed net sales proceeds of $25,000.00. Plaintiffs claimed that Defendant breached the agreement and, twenty years ago, obtained a judgment against him. The question before the Court is whether the debt owed to Plaintiffs is

excepted from discharge in Defendant's Chapter 7 bankruptcy case under 11 U.S.C. § 523(a)(4).[1] For the reasons below, the Court concludes that there are no genuine disputes of material fact and that Plaintiffs are unable, as a matter of law, to establish the elements necessary to except the debt from discharge. Accordingly, the Court will enter summary judgment in Defendant's favor.

## FACTS AND PROCEDURAL BACKGROUND

On September 27, 1984, Mr. and Mrs. Aamodt ("Plaintiffs") entered into a one-page consignment agreement (the "Agreement") with Main Line Auctioneers & Appraisers ("Main Line").[2] Defendant operated Main Line as a sole proprietorship.[3] Under the Agreement, Plaintiffs were guaranteed a net payment of $25,000.00 from the proceeds of an auction to be conducted on October 27, 1984. Over 200 items were to be auctioned, including several antique closets and cupboards and other antiques and art.[4]

Although the Agreement specified that Plaintiffs' items would be sold at public auction, Defendant sold many of the items that should have been included in the auction prior to the actual auction at "Friday night sales."[5] Plaintiffs allege that Defendant sold Plaintiffs' property "without attempting to work up the bid,"[6] resulting in the amounts obtained for certain items to be "far lower" than what Defendant had estimated.[7] The gross sales proceeds as of October 29, 1984, including both pre-auction and auction sales, totaled $23,824.50.[8] Plaintiffs' share of the auction

---

[1] All statutory references are to the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*
[2] Doc. No. 30, Exh. No. 1 (p. 46 of 83).
[3] Doc. No. 30, Exh. No. 5 (p. 64 of 83) (denoting Main Line as the "t/a" or "trading as" name for Defendant).
[4] *See* Mrs. Aamodt's Affidavit (Doc. No. 1, pp. 3-4); Doc. No. 30, p. 13.
[5] Mrs. Aamodt's Affidavit (Doc. No. 1, p. 4, ¶ 9). *See also* Doc. No. 30, Exh. No. 2 (pp. 18-44 of 83) (listing 157 items for a total sales price of $3,050.50).
[6] Mrs. Aamodt's Affidavit (Doc. No. 1, p. 4, ¶ 10).
[7] Mrs. Aamodt's Affidavit (Doc. No. 1, p. 4, ¶ 11).
[8] Doc. No. 30, Exh. No. 4 (p. 62 of 83).

proceeds, after deducting Defendant's auctioneer commission, moving expenses, and the $4,305.00 that Plaintiffs bid to purchase their own property at the auction,[9] was $14,795.83.[10]

Because Plaintiffs received less than the $25,000.00 net payment guaranteed by the Agreement, Plaintiffs sued Defendant in Pennsylvania state court.[11] Almost ten years after the auction, on July 19, 1994, the Pennsylvania court ruled that Defendant had valued the property to be auctioned at a minimum of $25,000.00, but that Plaintiffs' property was actually worth $55,000.00.[12] The Pennsylvania court also found that Defendant had agreed to conduct the auction on a date certain with only Plaintiffs' property to be offered for sale.[13] The Pennsylvania court then concluded that Defendant breached the Agreement by (i) selling items on days other than the scheduled date of the auction without notice to the parties; (ii) commingling Plaintiffs' property with other items for sale; and (iii) conducting the auction in "a less than vigorous manner."[14]

The Pennsylvania court calculated Plaintiffs' damages as being $55,000.00, less the $14,795.83 that it found was paid to Plaintiffs, for a total award of $40,204.17, together with costs and interest from October 27, 1984.[15] On November 30, 1994, the Pennsylvania court entered judgment against Defendant for $61,326.67, including accrued interest over ten years of $21,122.50.[16] In 2001, Plaintiffs domesticated the Pennsylvania judgment in Florida.

---

[9] Plaintiffs admitted bidding on their own items at the auction. *See* Doc. No. 30, ¶ 6. Their purchases are reflected as a deduction in Exh. No. 4 to the Motion.

[10] Plaintiffs contend that they received only $10,490.83 from Defendant, but they are bound by the Pennsylvania state court's finding that they received payment of $14,795.83 and are collaterally estopped from asserting otherwise in this proceeding. *In re Thacker*, 2015 WL 2455539, at *4 (Bankr. N.D. Fla. May 22, 2015). In any event, the discrepancy in the amount that Plaintiffs claim to have been paid is immaterial to the Court's ruling.

[11] *See* Mrs. Aamodt's Affidavit (Doc. No. 1, pp. 3-4).

[12] Doc. No. 30, Exh. No. 5 (pp. 65-66 of 83).

[13] Doc. No. 30, Exh. No. 5 (p. 65 of 83).

[14] Doc. No. 30, Exh. No. 5 (pp. 65-66 of 83).

[15] Doc. No. 30, Exh. No. 5 (p. 66 of 83).

[16] *See* Case No. 9:07-09555-ALP, Claim No. 2, pp. 4-5. In ruling on a motion for summary judgment, a court may take judicial notice of its own records and files. *St. Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (10th Cir. 1979).

Defendant filed this Chapter 7 bankruptcy case on July 28, 2014. Plaintiffs timely filed their complaint to determine the dischargeability of their debt under 11 U.S.C. § 523(a)(4) (the "Complaint").[17] The Complaint alleges a single theory of non-dischargeability under § 523(a)(4): that Defendant committed fraud upon Plaintiffs while acting in a fiduciary capacity.[18] Defendant filed an answer in which he alleged that Plaintiffs did not present all of the agreed upon items for auction and that Plaintiffs interfered with the auction by bidding on their own property.

Plaintiffs initially moved for summary judgment solely on the claim plead in their Complaint:  that their debt is for Defendant's fraud while acting in a fiduciary capacity.[19] Thereafter, Plaintiffs filed their *Amended Motion for Summary Judgment* (the "Summary Judgment Motion") raising, for the first time, two new theories of non-dischargeability under § 523(a)(4).[20] Plaintiffs now claim that their debt is also excepted from discharge under § 523(a)(4) as being for embezzlement and for larceny. Although the Court may grant summary judgment only on claims that have been properly pleaded,[21] the Court will treat the Summary Judgment Motion as a motion for leave to file an amended complaint with respect to the newly asserted claims for relief.

Although Plaintiffs did not re-file the affidavits originally submitted with the Complaint to support the Summary Judgment Motion, the Court has also considered those affidavits.[22] Defendant filed a written response to the Summary Judgment Motion,[23] disputing many of the facts asserted by Plaintiffs. In ruling on the Summary Judgment Motion, the Court is accepting the facts asserted by

---

[17] Doc. No. 1.
[18] *See* 11 U.S.C. § 523(a)(4). The Complaint does not mention any of the other theories of recovery under that sub-section.
[19] Doc. No. 29. (Note:  pages from the original Summary Judgment Motion appear to be missing.)
[20] Doc. No. 30.
[21] *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1314-15 (11th Cir. 2004) (noting plaintiffs may not raise new claims at the summary judgment stage and that the proper procedure for plaintiffs to assert a new claim is to amend the complaint).
[22] Doc. No. 1, pp. 3-5.
[23] Doc. No. 33.

Plaintiffs as though they are undisputed. However, the Court finds that even assuming the facts as asserted by Plaintiffs to be true, Plaintiffs cannot prevail on their claims as a matter of law.

## LEGAL ANALYSIS

### I.    Jurisdiction

The Court has jurisdiction over this proceeding under 28 U.S.C. § 1334 and the Standing Order of Reference[24] and possesses authority to enter a final judgment in this core proceeding under 28 U.S.C. § 157(b)(2)(I).

### II.    Motion for Leave to File Amended Complaint

Rule 4007(c) of the Federal Rules of Bankruptcy Procedure sets a deadline for parties to file complaints to determine the dischargeability of a debt of no later than 60 days after the first date set for the meeting of creditors under § 341(a). The court may extend that deadline but only if a party files a motion, establishing cause, prior to the date on which the deadline expires. The provisions of Rule 4007(c) are mandatory, and courts do not have discretion to grant a late-filed motion to extend the deadline.[25]

The Clerk's office mailed a notice to all creditors informing them of the January 17, 2015 deadline for filing § 523 complaints under Federal Rule of Bankruptcy Procedure 4007(c).[26] Plaintiffs timely filed the Complaint, alleging that Defendant committed fraud upon them while acting in a fiduciary capacity. Nearly six months after the deadline to file complaints to except a debt from discharge, Plaintiffs filed their Summary Judgment Motion, asserting for the first time that Defendant retained an undisclosed number of unidentified items consigned to him by

---

[24] *In re Standing Order of Reference - Cases Arising Under Title 11, United States Code*, Case No. 6:12-mc-26-ORL-22.
[25] *In re Alton*, 837 F.2d 457, 459 (11th Cir. 1988).
[26] Doc. No. 23, Case No. 9:14-bk-08659-FMD.

Plaintiffs.[27] Plaintiffs argue that this retention constitutes embezzlement, such that their judgment is excepted from discharge under § 523(a)(4).   In their Summary Judgment Motion, Plaintiffs also contend, for the first time, that their previous allegations (as set forth in Mrs. Aamodt's affidavit filed in support of the Complaint) regarding Defendant's private sales of their property and failure to properly conduct the auction, constitute larceny and that their judgment is thus excepted from discharge under § 523(a)(4).

In treating the Summary Judgment Motion as a motion for leave to file an amended complaint, the Court must determine whether the newly filed claims "relate back" to the filing of the original Complaint. It would be futile to allow an amended complaint to be filed if the newly added claims do not relate back to the date of the initial complaint, as such claims would be subject to dismissal as time-barred.[28] Generally, courts hold that an amended complaint does not relate back to the original filing when the amendments change the nature of the original complaint and the amended complaint was filed after the bar date.[29] Because Plaintiff's embezzlement claim relies upon facts not previously alleged—that Defendant retained an unknown, unidentified number of Plaintiffs' items—the Court finds that it does not relate back to the filing of the Complaint and is time-barred. However, Plaintiffs' larceny claim is based upon facts timely alleged by Plaintiffs— that Defendant sold Plaintiffs' items at private sales, commingled their items with those of other consignees, and did not conduct the auction vigorously.[30]

Accordingly, to the extent that the Court treats the Summary Judgment Motion as a motion to amend the Complaint, the motion is denied with respect to the embezzlement claim and granted with respect to the larceny claim.

---

[27] Doc. No. 30, pp. 7 and 13.

[28] *In re Slaughter Co. and Associates, Inc.*, 242 B.R. 97, 100 (Bankr. N.D. Ga. 1999).

[29] *See In re Chiasson*, 183 B.R. 293 (Bankr. M.D. Fla. 1995).

[30] Doc. No. 30, p. 14.

**Motion for Summary Judgment**

    A.    Summary Judgment Standard

Fed. R. Civ. P. 56(a), incorporated by Fed. R. Bankr. P. 7056, applies in adversary proceedings. To prevail on summary judgment, Rule 56(a) requires the moving party to show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In reviewing a motion for summary judgment, courts must review the record and draw all reasonable inferences in the light most favorable to the non-moving party.[31] When the facts are undisputed and the court need only render a legal conclusion, summary judgment is appropriate.[32] As the court in *In re Hazard*[33] stated:

> The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of fact, after which the opposing party must provide evidence establishing a genuine issue of material fact. *Poole v. Davis (In re Davis),* 2012 WL 4831494, at *2 (Bankr. D. Idaho Oct. 10, 2012) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24 (1986)). But even if the opposing party fails to establish the existence of disputed facts, the moving party must nevertheless establish it is entitled to judgment as a matter of law. *See North Slope Borough v. Rogstad (In re Rogstad),* 126 F.3d 1224, 1227–28 (9th Cir. 1997) (holding the trial court erred by resting its grant of summary judgment on the opposing party's failure to file a response).[FN5]

> Additionally, "'[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts' are inappropriate at the summary judgment stage." *Oswalt v. Resolute Indus., Inc.,* 642 F.3d 856, 861 (9th Cir. 2011) (alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)). And all justifiable inferences must be drawn in favor of the non-moving party. *Anderson,* 477 U.S. at 255.

>> FN5. As the Ninth Circuit BAP has noted, "Even a complete lack of opposition to a motion for summary judgment does not relieve the moving party of its obligation to meet its burden of showing entitlement to judgment as a matter of law." *Salehi v. Global Auto. Grp., Inc. (In re Salehi),* 2014 WL 2726149, at *4 n.7 (9th Cir. BAP, June 9, 2014) (citing *Rogstad,* 126 F.3d at 1227).

---

[31] *Bedoya v. Travelers Property Cas. Co. of America,* 773 F. Supp. 2d 1326, 1328 (M.D. Fla. 2011).
[32] *In re Sciarrino*, 2013 WL 3465920, at *2 (Bankr. M.D. Fla. July 10, 2013).
[33] 2015 WL 4735658, at *2 (Bankr. D. Idaho, August 10, 2015).

A court may grant summary judgment in favor of the non-moving party if no genuine dispute of material fact exists, the moving party has had an opportunity to present evidence on the issue on which summary judgment is granted, and the non-moving party is entitled to judgment as a matter of law.[34] As set forth above, the Court has, for purposes of the Summary Judgment Motion, assumed each of the facts asserted by Plaintiffs to be true and has concluded that Defendant is entitled to judgment as a matter of law.

B.      Analysis of Plaintiffs' Claims

The Eleventh Circuit Court of Appeals has held that exceptions to discharge should be construed strictly in favor of the debtor.[35] As set forth above, Plaintiffs' claims are limited to seeking an exception to discharge under § 523(a)(4) for fraud while acting in a fiduciary capacity and for larceny.

1.      *Claim for Fraud While Acting in a Fiduciary Capacity*

To prevail on their non-dischargeability claim for fraud while acting in a fiduciary capacity under § 523(a)(4), Plaintiffs must establish that Defendant, while acting in a fiduciary capacity, committed fraud against them.

a.      *Defendant did not act in a fiduciary capacity.*

For purposes of § 523(a)(4), the term "fiduciary" is narrowly construed; it refers to technical or express trusts.[36] Such a trust can exist when the parties share a relationship in which trust-type obligations are imposed by statute.[37] Plaintiffs argue that Defendant acted in a fiduciary capacity

---

[34] *Meyer v. AmerisourceBergen Drug Corp.*, 264 F. App'x 470, 474 (6th Cir. 2008); *In re Energy Co-op. Inc.*, 832 F.2d 997, 1005 (7th Cir. 1987).
[35] *Schweig v. Hunter (In re Hunter),* 780 F.2d 1577, 1579 (11th Cir. 1986).
[36] *Quaif v. Johnson*, 4 F.3d 950, 953 (11th Cir. 1993) (citing *Davis v. Aetna Acceptance Co.*, 293 U.S. 328 (1934)).
[37] *Matter of Bennett*, 989 F.2d 779, 785 (5th Cir. 1993).

because the preamble to his auction catalog[38] stated that he was acting as Plaintiffs' "agent." The law is clear, however, that an agency relationship does not automatically give rise to a fiduciary relationship.[39] Absent an express or technical trust, a fiduciary relationship will not be found to exist.

Here, the purpose of the Agreement was to authorize Defendant to serve as auctioneer of Plaintiffs' property. The Agreement itself creates no express or technical trust. Bankruptcy courts have consistently held that an individual who serves as an auctioneer or consignee under a private contract does not act in a fiduciary capacity.[40] Therefore, the Court concludes that the Agreement itself did not create a fiduciary relationship.

The Court then looks to the possibility of whether, under the *locus* of the Agreement, a statutory fiduciary relationship is express or implied. Under Pennsylvania law, auctioneers must deposit moneys received from the sale of an owner's property into a separate custodial or trust fund account and then account to the owner for the full amount received.[41] But the Pennsylvania statute is limited to the auctioneer's obligation to fully account for the sale and auction proceeds to the owner. The statute does not impose fiduciary duties on the auctioneer in connection with the actual conduct of the auction, such as Defendant's engaging in pre-auction sales or commingling of Plaintiffs' property with other individuals' property at the auction. Here, Plaintiffs take issue with how Defendant *conducted the auction* and, except for the embezzlement claim which was not

---

[38] Doc. No. 30, Exh. No. 7 (p. 72 of 83).

[39] *In re Blaszak*, 397 F.3d 386, 391 (6th Cir. 2005) (noting that while an ordinary principal-agent relationship can involve fiduciary duties, that relationship, standing alone, is insufficient to establish the type of fiduciary duty contemplated by § 523(a)(4))).

[40] *See, e.g., In re Teta*, 2011 WL 2435948, at *9-10 (Bankr. D. Colo. June 16, 2011); *In re Beetler*, 368 B.R. 720, 726 (Bankr. C.D. Ill. 2007); *In re Mask*, 2007 WL 7138339, at *3 (Bankr. N.D. Ga. Mar. 19, 2007); *In re Perryman*, 191 B.R. 196, 199 (Bankr. E.D. Okla. 1996); *Matter of Hyers*, 70 B.R. 764, 771 (Bankr. M.D. Fla. 1987); *In re Rigsby*, 18 B.R. 518, 520 (Bankr. E.D. Va. 1982); *In re Marshall*, 24 B.R. 105, 107 (Bankr. W.D. Mo. 1982) (auctioneer is mere agent, not a fiduciary, notwithstanding agreement to hold money in escrow).

[41] 63 Pa. Cons. Stat. § 734.21 (2008).

timely alleged, not with how Defendant *accounted for* the sale proceeds. The Court concludes that Pennsylvania law did not create a fiduciary relationship between Defendant and Plaintiffs for the purpose of the conduct of the auction.

Because neither the Agreement nor Pennsylvania law imposed fiduciary duties upon Defendant with respect to the actions about which Plaintiffs complain, the Court finds that Defendant was not acting in a fiduciary capacity for purposes of the allegations that support Plaintiffs' § 523(a)(4) claim.

       b.     *Plaintiffs cannot establish that Defendant committed fraud.*

Even if Plaintiffs could establish the existence of a fiduciary relationship between them and Defendant, they cannot establish that he committed a fraud upon them. Under § 523(a)(4), "fraud" refers to conduct involving intentional deceit and must be distinguished from the mere breach of a contractual obligation.[42]

To support their fraud claim, Plaintiffs contend that Defendant "could only have conducted the auction in a less than vigorous manner, ('carelessly'), because he intended to do so, whereas [Plaintiffs], understandably, took [Defendant] at his word."[43] Plaintiffs also contend that Defendant's fraud is shown by:

> (1) Narcisi's false statement of material fact by promising an auction of their items on a date certain and guarantee to pay the Aamodts a minimum of $25,000, net, . . . and (2) Narcisi's intent to falsify by guarantee of $25,000, net, after appraisal of approximately $20,000, . . . and (3) Narcisi's intent to deceive the Aamodts as shown by his immediate disposal of most of the Aamodts items by private sales for approximately $2,000, . . . and (4) the Aamodts' justifiable reliance on Narcisi due to his agreement to auction their items near Philadelphia and guarantee of a minimum payment of $25,000, net, . . . and (5) the Aamodts' loss is shown by the Pennsylvania court findings.[44]

---

[42] *In re Huntington*, 2012 WL 3073129, *10 (Bankr. W.D. Wash. July 30, 2012); *In re Tyson*, 450 B.R. 514, 522 (Bankr. E.D. Pa. 2011).
[43] Doc. No. 30, p. 10.
[44] Doc. No. 30. p. 10-11.

Each of these contentions demonstrates Defendant's breach of the Agreement. But other than the issues they have raised regarding the conduct of the auction and that the fact that Defendant commenced individual sales prior to the auction—a breach that would have operated in Plaintiffs' favor had those sales resulted in higher sales prices—Plaintiffs have presented no evidence that Defendant did not intend to comply with the Agreement as of the date it was entered into. Although not dispositive on the issue of fraud, it is noteworthy that the Pennsylvania state court did not find that Defendant had committed a fraud upon Plaintiffs, but only that Defendant had breached his contract with Plaintiffs in three material regards. Plaintiffs' claim has always sounded in contract, and that remains true today—thirty years after this dispute began. And, of course, claims for breach of contract are dischargeable.[45]

2.   *Claim for Larceny*

Even though the Complaint does not state a claim to except Plaintiffs' debt from discharge under § 523(a)(4) as a larceny, the Court will consider the Motion for Summary Judgment as an amendment to the complaint that relates back to the filing of the Complaint.

Larceny is interpreted in the common law for purposes of § 523(a)(4). Under the common law, larceny is defined as "a felonious taking of another's personal property with intent to convert it or deprive the owner of the same."[46] An essential element of a larceny claim is an unlawful taking of property.[47] Here, Defendant did not take Plaintiffs' property unlawfully; he took the property under the terms of the Agreement. The facts that Plaintiffs allege to support their larceny claim— that Defendant conducted private sales of their items, intermingled their items with those of other consignees, and failed to vigorously raise the bids—do not support a claim that Defendant intended

---

[45] *See, e.g., In re McClelland*, 2011 WL 2461885, at *14 (Bankr. N.D. Ga. June 8, 2011) (breach of contract claim is fully dischargeable).

[46] *In re Langworthy,* 121 B.R. 903, 907-908 (Bankr. M.D. Fla.1990).

[47] *In re Ankoanda*, 495 B.R. 599, 605 (Bankr. N.D. Ga. 2013).

to convert the items or deprive Plaintiffs of them. Plaintiffs cannot state a claim for larceny, and Defendant is entitled to summary judgment on this claim.

### CONCLUSION

The Court has given careful consideration to whether, if this case were to go to trial, there might be any additional evidence that Plaintiffs could present to support their claims. After giving every favorable inference possible to Plaintiffs, the Court has concluded that, absent direct testimony by Defendant that he did not intend to honor the terms of the Agreement at the time he negotiated it with Plaintiffs (the chances of which are non-existent), there is no likelihood that Plaintiffs will prevail on their claims. In light of the distance that Plaintiffs must travel from their Lake Placid, New York, home to the Fort Myers Courthouse and their health conditions as described in their *Motion for Continuance of Trial*,[48] the Court believes it would do a disservice to Plaintiffs if it were to merely deny the Summary Judgment Motion and proceed with the trial scheduled in October 2015.

Accordingly, it is

**ORDERED:**

1. The Court, treating the Summary Judgment Motion as a motion to amend the Complaint, DENIES the motion as to Plaintiffs' claim to except the debt from discharge under § 523(a)(4) as a claim for embezzlement and GRANTS the motion as to Plaintiffs' claim to except the debt from discharge under § 523(a)(4) as a claim for larceny.

2. Plaintiffs' Motion for Summary Judgment Motion is DENIED.

3. Summary judgment is GRANTED in favor of Defendant and against Plaintiffs on Plaintiffs' claims to except the debt from discharge for fraud while acting in a fiduciary capacity and larceny under 11 U.S.C. § 523(a)(4).

---

[48] Doc. No. 34.

4.      The Court will enter a separate judgment declaring Plaintiffs' claim to be dischargeable.

5.      The final evidentiary hearing scheduled for October 27, 2015, is CANCELLED.

The Clerk's Office is directed to serve a copy of this Order on Plaintiffs and Defendant via U.S. Mail.